UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HANSON WILSON-MILLAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 21-1375 (EGS) |
| ) | |
| U.S. BUREAU OF PRISONS *et al*., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff is a federal prisoner at the U.S. Penitentiary in Tucson, Arizona ("USP Tucson"). Appearing *pro se*, Plaintiff has filed an "Administrative Complaint" against the U.S. Bureau of Prisons ("BOP") and the BOP Director in his official capacity, seeking review of a final agency action under the Administrative Procedure Act ("APA") and asserting First Amendment violations. Compl., ECF No. 1. Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue and Rule 12(b)(6) for failure to state a claim, which Plaintiff has opposed. In separate motions, Plaintiff has moved to stay the proceedings and for an emergency injunction against staff at USP Tucson. For the following reasons, Defendants' motion will be GRANTED in part and DENIED in part, and the surviving claim will be severed and transferred without delay to the District of Arizona.

**I. BACKGROUND**

Plaintiff alleges that in March 2016, he was transferred to the U.S. Penitentiary in Coleman, Florida ("USP Coleman"), where "his Unit Team staff advised . . . that he would be submitted for transfer to a lesser security medium custody facility provided he maintained two

1

years' clear conduct." Compl. at 2 ¶ 6. A little over two years later, in June 2018, Plaintiff "observed a white BOP officer physically and verbally assault a handicapped African American inmate. After reporting the assault to a trusted staff member, officials placed Plaintiff in segregation on the premise that his continued presence in the general population posed a threat to the assaulting officer whose misconduct he had reported." *Id.* ¶ 7. Plaintiff "declined prison official's subsequent requests that he withdraw his report and participate in a cover-up." *Id.* At an unspecified time, the "assaulting officer was . . . transferred from USP Coleman," and Plaintiff was transferred "to a state prison in Illinois that was under federal judicial oversight to remedy constitutional violations." *Id.* ¶ 7. While confined in Illinois, Plaintiff "made a formal complaint to [then] U.S. Attorney General William Barr, whose office issued an order directing" BOP "to return Plaintiff to BOP's custody." *Id.* ¶ 8. On October 1, 2019, Plaintiff was transferred to USP Tucson. *Id.*

Allegedly, on April 14, 2020, the Warden of USP Tucson "submitted a request" to BOP's Designation and Sentence Computation Center ("DSCC") "to transfer Plaintiff to the Federal Correctional Institution in Fairton, New Jersey, or any other appropriate medium security facility . . . to place Plaintiff within 500 driving miles of his primary residence and family in the Massachusetts and New York area, as required by the First Step Act amendments to 18 USC 3621(b)." Compl. at 2 ¶ 9. On April 21, 2020, the request was denied "without explanation." *Id.* ¶ 10. Plaintiff "appealed from the DSCC's denial of the Warden's transfer request through the BOP Administrative Remedy Program[,]" but the "agency responses fail to set forth the factors, if any, that DSCC relied on to make its decision to deny the Warden's request." *Id.* ¶ 12.

On May 17, 2021, Plaintiff filed the instant two-count complaint seeking judicial review of BOP's denial of the Warden's transfer request. In Claim I, Plaintiff asserts that "BOP did not

consider the factors required to be considered by statute, 18 U.S.C. 3621(b)"; in Claim II, Plaintiff asserts that the denial was DSCC's retaliation "for his previously reporting staff misconduct and complaining to the Attorney General's office for the 2018 retaliatory transfer from USP Coleman, in violation of Plaintiff's First and Fifth Amendment rights." Compl. at 3. Plaintiff seeks a declaratory judgment as to both claims. In addition, Plaintiff seeks an order compelling "BOP [to] reconsider the USP Tucson Warden's April 14, 2020 request to transfer Plaintiff to FCI Fairton, New Jersey[,] or any other appropriate medium security facility," accounting for "each of the factors required to be considered [under] 18 U.S.C. 3621(b), and to report to this Court the factors so considered, the results of the reconsideration and a reasoned explanation for the grant or denial of the Warden's request." *Id*.

## II.  LEGAL STANDARDS

### 1. Rule 12(b)(3) Motions to Dismiss

A motion to dismiss for improper venue is governed by Rule 12(b)(3) and 28 U.S.C. § 1406(a). Those provisions permit a Court to dismiss a lawsuit "when venue is 'wrong' or 'improper.' " *Atl. Marine Const. Co. v. U.S. District Court for the W. District of Tex.*, 134 S.Ct. 568, 577 (2013). The question whether venue is proper "is generally governed by 28 U.S.C. § 1391[,]" *id*., which states that a lawsuit "may be brought in" a judicial district: (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located"; (2) "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"; or (3) "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b). When considering a Rule 12(b)(3) motion, the Court accepts any well-pled factual allegations regarding venue as true and draws all reasonable inferences and

resolves any factual conflicts in the plaintiff's favor.  *Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 116–17 (D.D.C. 2014).

### 2. Rule 12(b)(6) Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  To be viable, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks omitted). The plaintiff need not plead all of the elements of a prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), nor must the plaintiff plead facts or law that match every element of a legal theory. *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000).  Nevertheless, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Twombly*, 550 U.S. at 562.  A claim is facially plausible when the facts pled in the complaint allow the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While this standard does not amount to a "probability requirement," it does require more than a "sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 556).

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Atherton v. D.C. Office of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)).  The court must also give the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (internal citations omitted).

But it need not "accept inferences drawn by plaintiff[ ] if such inferences are unsupported by the facts set out in the complaint."  *Id.*  Nor must a court accept legal conclusions couched as facts.  *Iqbal*, 556 U.S. at 678.  In other words, "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements" are not sufficient to state a claim.  *Id.*  Although a *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson*, 551 U.S. at 94 (internal quotation marks and citations omitted), it "must plead 'factual matter' that permits the court to infer "more than the mere possibility of misconduct.' " *Atherton*, 567 F.3d at 681–82 (quoting *Iqbal*).

### III.  DISCUSSION

The "United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit."  *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted).  This doctrine applies to federal agencies and employees sued in their official capacities.  "To bring a claim against the United States, a plaintiff must identify an unequivocal waiver of sovereign immunity[,] and [c]ourts are required to read waivers of sovereign immunity narrowly and construe any ambiguities . . . in favor of immunity." *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1054 (D.C. Cir. 2014) (citation omitted)).  A waiver of sovereign immunity "must be unequivocally expressed in statutory text[,]" *Lane v. Pena*, 518 U.S. 187, 192 (1996), and "'it rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought[,]'" *Franklin-Mason*, 742 F.3d at 1054 (quoting *Minnesota v. United States*, 305 U.S. 382, 388 (1939)).

1. **Failure to State Claims under the APA and the Mandamus Act**

Defendants argue correctly that Plaintiff's APA claim is foreclosed by 18 U.S.C. § 3625, which states unambiguously that the APA's judicial review provisions, 5 U.S.C. §§ 701–706, do

not "apply to the making of any determination, decision, or order under this subchapter" titled "Imprisonment." *See* Mem., ECF No. 13 at 14-15; *Brown v. Fed. Bureau of Prisons*, 602 F. Supp. 2d 173, 176 (D.D.C. 2009) ("The plaintiff's place of imprisonment, and his transfers to other federal facilities, are governed by 18 U.S.C. § 3621(b), which is specifically exempt from challenge under the APA."). Plaintiff seems to agree but posits that this barrier does not "impact this Court's mandamus authority under 28 U.S.C. § 1361." Compl. at 1-2 ¶ 2. He is mistaken.

The Mandamus Act empowers district courts "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. The extraordinary writ of mandamus is available only if "(1) the plaintiff has a clear right to relief; (2) the defendant has a clear duty to act; and (3) there is no other adequate remedy available to the plaintiff." *In re Medicare Reimbursement Litig.*, 414 F.3d 7, 10 (D.C. Cir. 2005) (citations omitted). Under the APA, a court may not review an agency action and order relief where judicial review is precluded by another statute. 5 U.S.C. § 701(a)(1). In interpreting that provision, the Supreme Court has noted that "before any review at all may be had [of agency action], a party must first clear the hurdle of § 701(a)" and paragraph (a)(1) easily "requires construction of the substantive statute involved to determine whether Congress intended to preclude judicial review of certain decisions." *Heckler v. Chaney*, 470 U.S. 821, 828 (1985). Because Congress has clearly foreclosed review of the decision at issue, Plaintiff can establish no clear right to the requested relief. Further, the duty to be compelled must be nondiscretionary, *Pittston Coal Group v. Sebben*, 488 U.S. 105, 121 (1988), whereas "BOP's decisions with respect to inmate security[,] custody levels," and placement "are discretionary." *Perez v. Lappin*, 672 F. Supp. 2d 35, 45 (D.D.C. 2009); *see McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise" and thus discretionary). Consequently, Claim I of the Complaint is hereby dismissed.

### 2. Improper Venue and Severance of Claim

Conversely, under the law of this circuit, Claim II predicated on First Amendment retaliation survives for now. The D.C. Circuit instructs:

> Prisoners . . . retain their First Amendment right to petition the Government for a redress of grievances [and] [t]his right extends not just to court filings but also to the various preliminary filings necessary to exhaust administrative remedies prior to seeking judicial review. . . . Thus, although prison officials may limit inmates' ability to file administrative grievances provided the limitations are reasonably related to legitimate penological interests, [they] may not retaliate against prisoners for filing grievances that are truthful and not otherwise offensive to such interests[.]

*Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 584–85 (D.C. Cir. 2002) (internal quotation marks, citations, and alterations omitted). Further, allegations of "retaliatory reclassification and transfer" may satisfy the "widely accepted standard for assessing" a First Amendment retaliation claim. *Id*. at 585. Plaintiff's liberally construed allegations that the denial of the transfer request was motivated by his grievance activity is not implausible and thus sustainable at this motion to dismiss stage. *See Aref v. Holder,* 953 F. Supp. 2d 133, 146 (D.D.C. 2013) ("'An ordinarily permissible exercise of discretion may become a constitutional deprivation if performed in retaliation for the exercise of a First Amendment right.'") (quoting *Toolasprashad*, 286 F.3d at 585)). That said, the events giving rise to Plaintiff's First Amendment claim -- and those underlying his pending motion for emergency relief -- are not connected to the District of Columbia, nor are the responsible individuals located here. Therefore, the Court agrees that this venue is improper. *See* Defs.' Mem. at 21-24; 28 U.S.C. § 1391(b) (designating the proper venue as a judicial district in the State where "a substantial part of the events or omissions giving rise to the claim occurred").

When "venue [is laid] in the wrong [judicial] district," a district court "shall dismiss, or if it be in the interest of justice, transfer such case" to a district "in which it could have been

7

brought." 28 U.S.C. § 1406(a).  Transfers are favored to "preserv[e] a petitioner's ability to obtain review," *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001) (citation omitted), especially in *pro se* actions.  *See James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 15 (D.D.C. 2009) (citing cases).  Rather than dismiss this case outright, the Court will sever the surviving retaliation claim and transfer it appropriately.  *See* Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, . . . sever any claim against a party."); *M.M.M. on behalf of J.M.A. v. Sessions*, 319 F. Supp. 3d 290, 295 (D.D.C. 2018) ("Severed claims become independent actions that proceed separately and result in separate judgments.") (citations omitted)); *see also Harrison v. Fed. Bureau of Prisons*, No. 16-cv-819, 2019 WL 147720, at *4 (D.D.C. Jan. 9, 2019) ("District courts have broad discretion in determining whether severance of a claim is warranted, including the power to do so *sua sponte*.") (citations omitted)).

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is granted as to the APA claim comprising Claim I of the Complaint.  As to Claim II alleging unconstitutional retaliation, Defendants' motion is denied without prejudice.  A separate order accompanies this Memorandum Opinion.

SIGNED:     EMMET G. SULLIVAN
UNITED STATES DISTRICT JUDGE

Date: May 18, 2022